No. 72–6075. BLAND *v.* UNITED STATES. C. A. D. C. Cir. Certiorari denied.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL concur, dissenting.

Petitioner was 16 years old at the time of his arrest and at the time of his indictment for armed robbery of a post office. He was charged as an adult under D. C. Code Ann. § 16–2301 (3)(A) (Supp. V, 1972).\* He

---

\*That section reads:

"(3) The term 'child' means an individual who is under 18 years of age, except that the term 'child' does not include an individual who is sixteen years of age or older and—

"(A) charged by the United States attorney with (i) murder, forcible rape, burglary in the first degree, robbery while armed, or assault with intent to commit any such offense, or (ii) an offense listed in clause (i) and any other offense properly joinable with such an offense."

moved to dismiss the indictment, alleging that the statutory basis for prosecuting him as an adult failed to provide him with procedural due process. The District Court dismissed the indictment, 330 F. Supp. 34, and the Court of Appeals by a divided vote reversed that judgment, 153 U. S. App. D. C. 254, 472 F. 2d 1329.

Under the statute of the District of Columbia involved in *Kent* v. *United States,* 383 U. S. 541, a juvenile, age 16 or older, who was charged with a felony, might be held for trial as though he were an adult, if the Juvenile Court waived jurisdiction. *Kent* held that the Act, read in light of "the essentials of due process and fair treatment," *id.,* at 562 and 557, required a hearing on whether the Juvenile Court should waive its exclusive jurisdiction over the juvenile and transfer him to the criminal court of the District. And in *In re Gault,* 387 U. S. 1, we held that where under a state juvenile court act a juvenile is declared "delinquent" and either confined or held for regular criminal prosecution, there must be a due process hearing on the issue of "delinquency."

The District of Columbia Act was modified after *Kent* so as to give the U. S. Attorney the power to remove a juvenile from the statutory category of "child" merely by charging him with a designated felony. The House Report No. 91–907, p. 50, explains the reason for the change:

> "Because of the great increase in the number of serious felonies committed by juveniles and because of the substantial difficulties in transferring juvenile offenders charged with serious felonies to the jurisdiction of the adult court under present law, provisions are made in this subchapter for a better mechanism for separation of the violent youthful offender and recidivist from the rest of the juvenile community."

The "substantial difficulties" are obviously the constitutional rights explicated in *Kent* and in *Gault*. The "better mechanism" is the use of the shortcut employed, *viz.*, the discretion of the prosecutor. Two rather large questions are presented and they seem to me to be substantial.

*First.* A juvenile or "child" is placed in a more protected position than an adult, not by the Constitution, but by an Act of Congress. In that category he is theoretically subject to rehabilitative treatment. Can he, on the whim or caprice of a prosecutor, be put in the class of the run-of-the-mill criminal defendants, without any hearing, without any chance to be heard, without an opportunity to rebut the evidence against him, without a chance of showing that he is being given an invidiously different treatment from others in his group? *Kent* and *Gault* suggest that those are very substantial constitutional questions.

*Second.* The barricade behind which the prosecutor operates is that this, like other prosecutions, is committed to his informed discretion, which is beyond the reach of judicial intrusion. Mr. Justice Black and I said, in dissent in *Berra* v. *United States,* 351 U. S. 131, at 140:

> "[I]t is true that under our system Congress may vest the judge and jury with broad power to say how much punishment shall be imposed for a particular offense. But it is quite different to vest such powers in a prosecuting attorney. A judge and jury act under procedural rules carefully prescribed to protect the liberty of the individual. Their judgments and verdicts are reached after a public trial in which a defendant has the right to be represented by an attorney. No such protections are thrown around decisions by a prosecuting attorney. Substitution of the prosecutor's caprice for

the adjudicatory process is an action I am not willing to attribute to Congress in the absence of clear command. Our system of justice rests on the conception of impersonality in the criminal law."

The Administrative Procedure Act, 5 U. S. C. § 701 *et seq.,* gives the courts power to review "agency action" and to hold it unlawful, if found to be "contrary to constitutional right, power, privilege, or immunity." § 706 (2)(B). This arguably is broad enough to reach the exercise of a prosecutor's discretion in a way that violates the standards of due process laid down in *Kent* and in *Gault.*

One needs no reminder that government too can be lawless, that government cannot lead the way in law and order when it is the great malefactor. The Administrative Procedure Act is indeed part of the citizen's arsenal against lawless government. As Professor Kenneth Davis said in Discretionary Justice 210 (1969): "Under the Administrative Procedure Act judicial review of the exercise of executive discretion is the rule and unreviewability is the exception."

Respecting "the settled judicial tradition" not to interfere with the prosecuting function, Professor Davis says:

"Is it because the tradition became settled during the nineteenth century when courts were generally assuming that judicial intrusion into any administration would be unfortunate? Is it because the tradition became settled while the Supreme Court was actuated by its 1840 remark that 'The interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief'? Is it because the tradition became settled before the courts made the twentieth-century discovery that the courts can interfere with executive

action to protect against abuses but at the same time can avoid taking over the executive function? Is it because the tradition became settled before the successes of the modern system of *limited* judicial review became fully recognized?

"On the basis of what the courts know today about leaving administration to administrators but at the same time providing an effective check to protect against abuses, should the courts not take a fresh look at the tradition that prevents them from reviewing the prosecuting function? Throughout the governmental system, courts have found that other administrative or executive functions are in need of a judicial check, with a limited scope of review. *The reasons for a judicial check of prosecutors' discretion are stronger than for such a check of other administrative discretion that is now traditionally reviewable.* Important interests are at stake. Abuses are common. The questions involved are appropriate for judicial determination. And much injustice could be corrected." *Id.,* at 211–212.

These two questions are large questions and substantial ones. I would grant the petition for certiorari in order to resolve them.