**In the Matter of the WELFARE
OF: L.J.S. and J.T.K.**

Nos. C6–95–993, CX–95–995.

Court of Appeals of Minnesota.

Nov. 14, 1995.

Review Denied Jan. 25, 1996.

William R. Kennedy, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, for Appellant L.J.S. # C6–95–993.

Warren R. Sagstuen, Richard G. Carlson, Assistant Public Defenders, Minneapolis, for Appellant J.T.K. # CX–95–995.

Hubert H. Humphrey, III, Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, Paul R. Scoggin, Assistant County Attorney, Minneapolis, for Respondent # C6–95–993; # CX–95–995.

Considered and decided by HARTEN, P.J., TOUSSAINT, C.J., and LANSING, J.

## OPINION

LANSING, Judge.

These consolidated certified questions raise constitutional challenges to the new extended jurisdiction juvenile statute and to the new presumption of certification applied in certain juvenile delinquency proceedings. *See* Minn.Stat. §§ 260.125, subd. 2a, 260.126, subd. 1(2). The trial court in each case denied defense challenges to the constitutionality of the statute, but certified the question as important and doubtful. We conclude that the statutes are constitutional and answer the consolidated certified questions in the negative.

## FACTS

In 1994 the legislature amended the laws pertaining to juveniles to provide extended jurisdiction that allows the juvenile court to retain jurisdiction until age twenty-one and to impose a juvenile disposition subject to a stayed adult penalty that can be imposed if the juvenile violates the conditions of his disposition or commits a new offense. *See* 1994 Minn. Laws ch. 576, § 14 (codified at Minn.Stat. § 260.126). A second amendment provides for presumptive certification for adult prosecution for certain offenses if the juvenile is sixteen or seventeen. *See id.* at § 13 (codified at Minn.Stat. § 260.125, subd. 2a). Presumptive certification may be rebutted by clear and convincing evidence that retaining the proceeding in juvenile court serves the public interest. *Id.*

J.T.K. appeals an order allowing the prosecutor to designate an extended jurisdiction juvenile offense, and L.J.S. appeals an order applying presumptive certification. *See id.* at § 68 (making both provisions effective January 1, 1995). The petition filed against sixteen-year-old J.T.K. alleged terroristic threats and second and third degree assault on January 19, 1995. The petitions filed against seventeen-year-old L.J.S. alleged first degree burglary, aggravated robbery, and possession of a shotgun on March 3, 1995; and robbery, property damage, and fleeing from police on March 12, 1995.

## ISSUES

The following issues are certified as important and doubtful:

I. Is the provision in Minn.Stat. § 260.126, subd. 1(2) for prosecutor-designated extended jurisdiction juvenile proceedings unconstitutionally vague?

II. Does the prosecutor-designated extended jurisdiction juvenile provision violate the separation of powers?

III. Does the presumptive certification statute, Minn.Stat. § 260.125, subd. 2a, violate equal protection?

IV. Does the presumptive certification statute violate due process by creating a mandatory irrebuttable presumption of certification?

V. Does the presumptive certification statute violate due process by placing on the juvenile the burden of persuasion?

## ANALYSIS

### I

■ The section of Minn.Stat. § 260.126 at issue provides that a proceeding involving a child alleged to have committed a felony offense is an extended jurisdiction juvenile prosecution if:

\* \* \* \*

(2) the child was 16 or 17 years old at the time of the alleged offense; the child is alleged to have committed an offense for which the sentencing guidelines and applicable statutes presume a commitment to prison or to have committed any felony in which the child allegedly used a firearm; *and the prosecutor designated in the delinquency petition that the proceeding is an extended jurisdiction juvenile prosecution;*

\* \* \* \*

Minn.Stat. § 260.126, subd. 1(2) (1994) (emphasis added). J.T.K. asserts that this language is unconstitutionally vague and violates due process by creating the potential for arbitrary and discriminatory enforcement.

■ A statute must define a criminal offense with sufficient definiteness to meet due process standards. *State v. Newstrom,* 371 N.W.2d 525, 528 (Minn.1985). A penal statute must define the offense so that ordinary people can understand what is prohibited and so that those charged with enforcing the statute have minimal guidelines that prevent arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Of these two requirements, the prevention of arbitrary and discriminatory enforcement is the more important. *Id.* at 358, 103 S.Ct. at 1858.

A prosecutor can designate an extended jurisdiction juvenile proceeding only if the

juvenile is sixteen or seventeen years old and only if the petition alleges an offense with a presumptively executed guidelines sentence or an offense involving use of a firearm. Minn. Stat. § 260.126, subd. 1(2). These criteria are very specific. They are neither vague nor conducive to arbitrary and discriminatory enforcement.

■ The Minnesota Supreme Court upheld the previous juvenile reference statute against a vagueness challenge when reference depended on suitability for juvenile treatment or whether public safety was served by proceeding in juvenile court. *In re Welfare of I.Q.S.*, 309 Minn. 78, 84–85, 244 N.W.2d 30, 36–37 (1976). The criteria in the current statute for prosecutor-designated extended jurisdiction juvenile prosecutions are much more specific. The statute does not lack minimal guidelines for extended jurisdiction juvenile designation or give too much discretion to prosecutors in deciding what cases to designate. We reject J.T.K.'s suggestion that a higher standard of definiteness should apply because the designation is made by the prosecutor rather than the court. Criminal statutes generally are judged by the guidance they provide to law enforcement and to prosecutors. *See, e.g., State v. Krawsky*, 426 N.W.2d 875, 878 (Minn.1988).

Because we conclude that Minn.Stat. § 260.126, subd. 1(2) is not unconstitutionally vague, we do not reach the state's argument that the void-for-vagueness doctrine applies only to statutes defining a criminal offense.

## II

■ J.T.K. argues that the prosecutor's exclusive role in designating the extended jurisdiction juvenile proceedings under Minn. Stat. § 260.126, subd. 1(2) violates the separation of powers. He maintains that only the court can constitutionally designate a juvenile case as an extended jurisdiction juvenile proceeding because the designation sharply restricts the court's sentencing powers. *See generally State v. Olson*, 325 N.W.2d 13, 18 (Minn.1982) (imposition of sentence within limits prescribed by legislature is purely a judicial function).

J.T.K. characterizes the prosecutor's designation of an extended jurisdiction juvenile prosecution as essentially a sentencing determination because it prevents the court from imposing a purely juvenile disposition. The state counters that the decision is merely a charging decision. *See generally State v. Johnson*, 514 N.W.2d 551, 556 (Minn.1994) (prosecutor has broad authority to determine whom to prosecute and what charges to bring).

The Minnesota Supreme Court, in analyzing a similar issue, discounted the significance of the charging/sentencing distinction in juvenile proceedings: "Our examination of the juvenile court statute leads us to conclude that the legislature had the clear intent to make laws dealing with juvenile delinquency sui generis." *In re Welfare of K.A.A.*, 410 N.W.2d 836, 838 n. 4 (Minn.1987). The statute's provision for varying means of designation—by the court itself, by the court on the prosecutor's recommendation, or by the prosecutor based on the specific criteria—suggests that this decision is *sui generis*, with no analogue in criminal procedure. *See* Minn. Stat. § 260.126, subd. 1(3).

Furthermore, the U.S. Supreme Court in recent years has emphasized a "flexible understanding of separation of powers" that does not require a "hermetic division among the Branches." *Mistretta v. United States*, 488 U.S. 361, 381, 109 S.Ct. 647, 659–60, 102 L.Ed.2d 714 (1989). Even if the prosecutor's extended jurisdiction juvenile designation restricts to some degree the court's ultimate sentencing options, some interplay between the responsibilities of the executive and judicial branches is permitted. For instance the well-established executive parole power and pardon authority impinge on a court's sentencing powers. *State v. Pierce*, 657 A.2d 192, 195 (Vt.1995).

In analyzing a challenge to a similar federal statute, the D.C. Circuit Court of Appeals concluded that the statute did not violate due process or equal protection. *United States v. Bland*, 472 F.2d 1329, 1336 (D.C.Cir.1972) (upholding statute allowing prosecutor to charge as adults, juveniles of a certain age who violate specified statutes), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975

(1973). Although not directly addressing a separation-of-powers argument, *Bland* treated the prosecutor's discretion as merely a form of the charging discretion that had historically been accorded to the prosecutor. *See id.* at 1337 (judicial deference to prosecutorial discretion extends to determinations whether persons should be charged as juvenile or adult). Courts in most other jurisdictions have followed the rationale of *Bland* and rejected separation-of-powers challenges to statutes giving a prosecutor absolute or conditional discretion to charge a juvenile as an adult. *See, e.g., Jones v. State,* 654 P.2d 1080, 1083 (Okla.Crim.App.1982). J.T.K. cites no contrary authority.

The U.S. Supreme Court has held that a juvenile is entitled to a hearing, the effective assistance of counsel, and a statement of reasons before the court can waive juvenile court jurisdiction. *Kent v. United States,* 383 U.S. 541, 553–54, 86 S.Ct. 1045, 1053–54, 16 L.Ed.2d 84 (1966). But J.T.K. cites *no* authority holding that *Kent* prevents the legislature from giving the prosecutor sole discretion to decide that a juvenile should be prosecuted in adult court. Because the prosecutor's authority under Minn.Stat. § 260.126, subd. 1(2) is much more limited than that, and based on the persuasive authority from other jurisdictions, we conclude that the prosecutor-designated extended jurisdiction juvenile provision does not violate the separation of powers.

### III

█ L.J.S. argues that the presumptive certification provision in Minn.Stat. § 260.125, subd. 2a violates equal protection because there is no rational basis for distinguishing those juveniles subject to the provision from those not within its definition.[1]

The presumptive certification provision states:

It is presumed that a proceeding involving an offense committed by a child will be certified to district court if:

(1) the child was 16 or 17 years old at the time of the offense; and

(2) the delinquency petition alleges that the child committed an offense that would result in a presumptive commitment to prison under the sentencing guidelines and applicable statutes, or that the child committed any felony offense while using * * * a firearm.

Minn.Stat. § 260.125, subd. 2a (1994). If the presumption applies, then the juvenile bears the burden of rebutting it by clear and convincing evidence. L.J.S. concedes that the statute involves no suspect classification, and that the "rational basis" test is the appropriate standard for determining whether the statute violates equal protection.

█ L.J.S. is claiming only a violation of the Minnesota Constitution. Under Minnesota's "rational basis" test, there must be a genuine and substantial distinction between those included in the classification and those excluded, the classification must be relevant to the purpose of the law, and the statute must have a legitimate purpose. *State v. Russell,* 477 N.W.2d 886, 888 (Minn.1991). The court will not hypothesize a rational basis to justify a classification. *Id.* at 889.

Both the offender-age and the offense criteria in the presumptive certification statute are relevant to the purpose of the statute. The purpose of the juvenile certification statute has been narrowed to protecting public safety. *See* Minn.Stat. § 260.125, subd. 2(6)(ii) (state must show that retaining the proceeding in juvenile court does not serve public safety), subd. 2a (juvenile must rebut presumption of certification by showing that retaining juvenile court jurisdiction serves public safety).

The juvenile's age is highly relevant to whether juvenile jurisdiction serves public safety. *Cf. In re Welfare of K.C.,* 513 N.W.2d 18, 23 (Minn.App.1994) (there is a rational connection between juvenile's age and the ability of the juvenile system to treat the juvenile), *review denied* (Minn. May 17, 1994). If a juvenile's age curtails the length

---

1. Since this appeal was filed, L.J.S. has reached a plea agreement under which he has pleaded guilty to adult criminal charges. Both parties, however, urge this court to decide the certified question despite its possible mootness. The question is fully briefed and was adequately litigated in the trial court. *See State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989).

of time available for juvenile treatment, and if the offense indicates danger to the public, the public safety is not served.

The offense criteria are also directly related to the danger to public safety. Offenses carrying a presumptively executed sentence are generally crimes against the person, representing a greater threat to public safety. *See generally* Minn. Sent. Guidelines IV. Crimes involving the use of firearms also pose a greater threat to public safety.

L.J.S. argues that most adult offenders charged with offenses calling for presumptive prison sentences plead to lesser offenses or receive downward departures. But, even assuming that is true, the ways in which trial courts and attorneys view individual cases are not relevant to whether the guidelines' presumptive disposition adequately measures the seriousness of an offense. We conclude that the presumptive certification statute does not violate equal protection.

## IV

L.J.S. argues that the presumptive certification statute violates due process because it creates a mandatory, irrebuttable presumption. *See Sandstrom v. Montana,* 442 U.S. 510, 523–24, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979) (due process prevents any presumption in a criminal case that shifts the burden of proof on an element of the offense or that establishes a conclusive, irrebuttable presumption). The presumptive certification statute does not affect the state's burden of proving an *element* of the offense, and so does not conflict with the presumption of innocence. *See Bland,* 472 F.2d at 1337–38; *Jones v. State,* 654 P.2d at 1082.

Neither does the presumptive certification statute create an irrebuttable presumption. The juvenile may rebut the presumption "by demonstrating by clear and convincing evidence that retaining the proceeding in the juvenile court serves public safety." Minn. Stat. § 260.125, subd. 2a. The juvenile may present relevant evidence on several listed factors. *Id.,* subd. 2b. L.J.S. cites no authority to support his claim that a presumption is irrebuttable if the basic facts giving rise to the presumption are beyond challenge. The statute still allows the juvenile to

present evidence going beyond those basic facts to the broader issue of whether public safety is served.

## V

Finally, L.J.S. argues that the presumptive certification statute violates due process by shifting the burden of persuasion to the juvenile. Shifts in the burden of persuasion on any element in a criminal offense violate due process. *See, e.g., United States v. United States Gypsum Co.,* 438 U.S. 422, 435–36, 98 S.Ct. 2864, 2872–73, 57 L.Ed.2d 854 (1978) (trial on charges of Sherman Act violations); *Morissette v. United States,* 342 U.S. 246, 274–75, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952) (trial on charge of theft of government property). The certification presumption applies only to a pretrial procedure, although one that determines which court will try the juvenile. But criminal defendants routinely bear the burden of persuasion on some pretrial motions, such as constitutional challenges to statutes. *See State v. Merrill,* 450 N.W.2d 318, 321 (Minn.1990) (defendant claiming statute is unconstitutional bears heavy burden of showing unconstitutionality beyond a reasonable doubt), *cert. denied,* 496 U.S. 931, 110 S.Ct. 2633, 110 L.Ed.2d 653 (1990).

The state concedes that some presumptions, at least irrebuttable ones, may violate due process even though they occur in a civil context which does not implicate the presumption of innocence. *See, e.g., Stanley v. Illinois,* 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972) (irrebuttable presumption that all unwed fathers are unfit parents violates due process). But, the presumption of certification that applies to L.J.S. is not irrebuttable. Moreover, the presumption does not shift the burden of persuasion on any element of the offense. The presumption merely determines which court will try the case and evaluate the elements of the offense.

## DECISION

The statutory provision for a prosecutor-designated extended jurisdiction juvenile proceeding is not unconstitutionally vague

and does not violate the separation-of-powers doctrine. The presumptive certification statute does not violate equal protection or due process.

**Certified questions answered in the negative.**